UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY JENNINGS, | ) No. CV-09-219-LRS |
| Plaintiff, | ) **ORDER DENYING** |
| v. | ) **DEFENDANT'S MOTION FOR** |
| STEVENS COUNTY, | ) **SUMMARY JUDGMENT** |
| Defendant. | ) |

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (Ct. Rec. 16), filed July 21, 2010. The motion was heard without oral argument.

**I. BACKGROUND**

This case was removed from Lincoln County Superior Court based on federal question jurisdiction. In her Amended Complaint, Plaintiff Tracy Jennings asserts three claims against Defendant Stevens County: 1) handicap discrimination; 2) wrongful discharge in violation of public policy; and 3) violation of the Family Medical Leave Act ("FMLA").

Defendant moves for summary judgment on all of Plaintiff's claims, asserting that Plaintiff was not terminated or disciplined due to a disability; that even if she was "disabled," she was not denied a reasonable accommodation as there was never a request for such by Plaintiff; that the Defendant had a legitimate,

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT -1**

non-discriminatory reason for putting Plaintiff on administrative leave; that Plaintiff was not "discharged," but rather after being put on leave, Defendant gave her every opportunity to return, met with her representatives and followed her representatives requests; that Plaintiff never sought reinstatement nor was Plaintiff deprived of anything; that FMLA does not prohibit an employer from taking an adverse action against an employee in FMLA leave for performance issues; and that the County had already determined that termination was an option for Plaintiff prior to their learning of Plaintiff's serious medical problem.

## II. DISCUSSION

### A. Summary Judgment

### 1. Fed. R. Civ. P. 56 Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**2. WLAD Disability Discrimination**

Under Washington's Law Against discrimination (" WLAD"), it is unlawful for an employer to discriminate against any person in the terms or conditions of employment or discharge any employee because of the presence of any sensory, mental, or physical disability. RCW 49.60.180(2) and (3). If the employer fails to reasonably accommodate the limitations of a disabled employee, such failure constitutes discrimination unless the employer can demonstrate such an accommodation would be an undue hardship to the employer's business. *Snyder*, 98 Wn.App. at 326.

A *prima facie* case of failure to reasonably accommodate a disability under the WLAD includes: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corporation*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003). The burden is on the employee to present a *prima facie* case of discrimination, including medical evidence of disability. *Pulcino v. Federal Express Co.*, 141 Wn.2d 629, 642, 9 P.3d 787 (2000). Only when the employee meets this burden, does the burden of proof shift to the employer to show that it had a legitimate, non-discriminatory reason for its

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -3**

adverse employment action against the employee.

### a. Was Plaintiff Disabled?

Plaintiff was an employee for Stevens County District Court. Plaintiff contends, through her physicians, that her inability to handle the stress and anxiety caused by working for Pamela Payne, a judge in charge of District Court for Stevens County, rendered her "disabled" to perform the essential functions of her job as an employee for Stevens County District Court. Defendant contends it is unclear as to whether Plaintiff is making an accommodation claim or a disparate treatment claim, however, both fail as a matter of law. Defendant further argues that Plaintiff was not terminated or disciplined due to a disability. Defendant concludes, citing *Riehl v. Foodmaker*, 152 Wn.2d 138 (2004), that to survive summary judgment, an employee must show that a reasonable fact finder could find that the employee's disability was a substantial factor motivating the employer's adverse action.

RCW 49.60.040(25)(a) defines "disability" as "the presence of a sensory, mental, or physical impairment that . . . (i) [i]is medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact." "A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter." RCW 49.60.040(25)(b). An impairment must have "a substantially limiting effect upon the individual's ability to perform her job" and "medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the effect that it would create a substantially limiting effect." RCW 49.60.040(25)(d)(i) and(ii). "[A] limitation is not substantial if it has only a trivial effect." RCW 49.60.040(e).

Plaintiff's disability, apparently acquired due to her mental history and

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT -4

situational anxiety over her encounter with Judge Payne, is not disputed by the parties. Based on Defendant's version of facts, the cause of the adverse employment action arose prior to the County's notice of Plaintiff's disability. Plaintiff's physician Dr. Bacon opines that, as a result of the effects of her treatment by Judge Payne on April 12, 2007[1] and June 13, 2007, Plaintiff is not currently capable of performing the duties of the particular job she had at the district court, but is capable of holding down a regular job elsewhere.

Dr. Bacon opines by deposition that before the events which occurred beginning on April 12, 2007, and for which he began to treat Jennings on May 7, 2007, Jennings suffered from Attention Deficit Hyperactivity Disorder (ADHD) as well as from a generalized anxiety disorder, but that those conditions were not interfering with her ability to work. He further opines that, as a result of the incident with Judge Payne, and the manner in which Judge Payne chose to treat Jennings thereafter, Jennings suffered an exacerbation of her underlying conditions which required new diagnoses of adjustment disorder and Post Traumatic Stress Disorder, which remain current diagnoses. It appears that there is no dispute that Plaintiff is disabled for purposes of the WLAD claim.

///

---

[1] The parties dispute the April 12, 2007 event. Plaintiff disputes Judge Payne's denial that she yelled and was hostile to Jennings on April 12, 2007. Plaintiff clearly testifies that Judge Payne did approach her aggressively, with a raised voice, and in a very hostile manner on that occasion. (Dep. of Tracy Jennings, pp. 38-44). There are witnesses to Judge Payne's demeanor almost immediately after the incident and a co-worker recalls that she heard Judge Payne slam the office door both on her way in and on her way out from Jenning's office that day and, right after the second slam, observed the judge "walking very hard, and she had a frown on her face, and her arms were – she was real stiff and angry looking..." (Dep. of Barbara Lil'John, pp. 12-15). Maybe five to ten minutes elapsed between the two slams overheard by Lil' John. (*Id*. p. 29).

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -5**

### b. Was The Plaintiff Reasonably Accommodated?

Defendant argues that there was no evidence of a failure to accommodate Plaintiff's disability. Defendant states that Plaintiff was originally placed on administrative leave June 13, 2007[2] pending a pre-termination hearing for allegedly being a "disruptive influence" at work. After being placed on this leave, the County scheduled a pre-termination meeting to discuss the situation with Plaintiff and her representative. Defendant states that the disciplinary hearing was moved from June 23, 2007 to June 28, 2007 at the request of Plaintiff's union representative. The hearing was held on June 28, 2007 at which time the County requested that Plaintiff sign off on a corrective action plan (Ct. Rec. 17, Exh. 9) and come back to work. The County then received notice and a letter from Plaintiff's doctor that she was disabled, unable to do the essential functions of the job, and she would not be coming back to work nor signing the corrective plan. The County requested additional medical information so they could more fully understand the situation.

On July 17, 2007 Plaintiff filed a second L&I claim. Also on July 17, 2007, the County sent Plaintiff a notice of obligations and expectations under FMLA and a letter requesting additional medical information. On July 20, 2007, the County sent a second letter requesting information. On or about July 24, 2007, the County received an FMLA form from Plaintiff's medical doctor, Dr. Bacon, stating that she recently suffered a medical condition, described as PTSD and couldn't return for work. The next day the County received a letter from Plaintiff's doctor stating that he couldn't divulge additional medical information.

---

[2] Plaintiff was off work, however, from May 22, 2007 until June 5, 2007 on FMLA leave due to a "hostile work environment." On June 4, 2007 she filed an L&I claim pertaining to the April 12, 2007 encounter with Judge Payne. Plaintiff's doctor signed the L&I claim on June 7, 2007.

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -6**

On July 26, 2007, the County sent a letter to Plaintiff directing her to attend a fitness for duty exam to determine if she was capable of returning to work. The letter also directed Plaintiff to cooperate for risk termination and advised she was being placed on administrative leave without pay. On July 31, 2007, the County gave additional directions. On August 9, 2007 the County, having not received a response to the letter directing fitness exam, sent an additional letter indicating a preliminary decision to terminate Plaintiff's employment for non-cooperation. A pretermination hearing was scheduled for August 20, 2007.

On August 14, 2007, Plaintiff's psychiatrist, Dr. Bot, drafted a report based upon an independent medical exam, wherein he stated that Plaintiff was not suffering from PTSD, but from an adjustment disorder, that she was predisposed to due to a pre-existing personality disorder. On August 29, 2007 the County, in accordance with an agreement with Plaintiff's union representative, sent a letter to Plaintiff allowing her a second opportunity to attend a fitness for duty exam. On September 25, 2007 Plaintiff cooperated with the County and attended a fitness for duty exam. The examiner determined that she could not return to work and perform the essential functions of her job due to an anxiety disorder and workplace stress.

On October 9, 2007, a letter was sent to Plaintiff informing her of an interactive meeting scheduled for October 23, 2007, wherein they would discuss any specific dates she could return to work, any restrictions she may have and any other issues concerning her employment. On October 22,[3] 2007, an interactive meeting was held with Plaintiff's representative present, in place of Plaintiff, and it was decided to not terminate Plaintiff, but to put her on leave until cleared to return to work.

---

[3] According to Ct. Rec. 17, Exhibit 19, the interactive meeting was held on October 22, 2007 instead of October 23, 2007.

**ORDER DENYING MOTION FOR
SUMMARY JUDGMENT -7**

Defendant argues that there was never a request for accommodation by the Plaintiff. Indeed, Plaintiff does not argue that a reasonable accommodation was not offered, such as working under a supervisor other than Judge Payne. Rather, Plaintiff contends she "was doing satisfactory work prior to being accosted by Judge Payne and then taking her first FMLA leave beginning on May 22, 2007." Plaintiff states she was constructively discharged[4] by Judge Payne through Judge Payne's deliberate acts of retaliatory and unwarranted discipline in the aftermath of Plaintiff's emotional disabilities due to the April 2007 incident involving Judge Payne.

Plaintiff argues that whether she was discharged in this case is a question of fact. Plaintiff contends that she has produced sufficient evidence that she did suffer a deterioration in her medical condition due to Judge Payne's conduct requiring her to take medical leave, that Judge Payne retaliated against her when she returned from that leave by engaging in unwarranted discipline. The effects of Judge Payne's behavior was Plaintiff's withdrawal from the district court environment due to being unable to work in that setting. Plaintiff concludes that Judge Payne's disciplinary action against her was a substantial factor in Payne's decision to take those actions which led to Plaintiff's constructive discharge. This establishes a prima facie case of disparate treatment disability discrimination according to Plaintiff.

Finally Plaintiff argues that falsity of the employer's stated reason alone can establish pretext because the trier of fact can reasonably infer from the falsity that the employer is dissembling to cover up a discriminatory purpose. Here

---

[4]Plaintiff cites *Barrett v. Warehauser*, 40 Wn.App. 630, 631-31 (1985) ("A constructive discharge occurs 'where an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job.'"

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -8**

Defendant's articulated reason for the acts of Judge Payne, which caused the constructive discharge of Plaintiff, is that she was "being a disruptive influence at work." This reason, Plaintiff asserts, is pretexual because it is not true. During her 6 ½ years[5] of employment with the County, Plaintiff was never reprimanded or disciplined for anything before Judge Payne decided to send her home on forced leave. Plaintiff's own supervisor, Betty Durbin, had never formed any intent to discipline Plaintiff and was surprised when Judge Payne opted to do so. Another former co-worker Barb Lil' John disputes the accusation that Plaintiff was a disruptive influence at work based on her personal observation. Based on an issue of fact regarding pretext, Plaintiff urges the Court to allow the disparate treatment discrimination claim to proceed to trial.

The court finds, and it is undisputed, that Plaintiff had a "disability." The court also finds that Plaintiff never requested accommodation. Therefore an accommodation theory of Plaintiff's WLAD claim, to the extent such theory is contemplated, cannot survive summary judgment. Plaintiff's disparate treatment discrimination claim, however, is better articulated in Plaintiff's response to Defendant's motion for summary judgment.

When responding to a summary judgment motion, the plaintiff in an intentional discrimination case is presented with a choice regarding how to establish his or her case. Plaintiff may choose the pretext method, which was established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where the plaintiff must initially establish a prima facie case of unlawful discrimination. If the plaintiff establishes a prima facie case, a rebuttable presumption that the employer unlawfully discriminated against is created. The burden of production then shifts to the defendant to articulate a

---

[5] According to Plaintiff's Independent Medical Examination report, Plaintiff began working for the County on February 6, 2001. (Ct. Rec. 17, Exh. 14).

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -9**

legitimate, nondiscriminatory reason for its employment decision. If the defendant articulates such a reason, the presumption of unlawful discrimination "simply drops out of the picture" and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason is not its true reason, but is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once evidence supporting a prima facie case of employment discrimination and pretext has been presented, and "the record contains reasonable but competing inferences of both discrimination and nondiscrimination, 'it is the jury's task to choose between such inferences.'" *Hill*, 144 Wn.2d at 186, citing *Carle v. McChord Credit Union*, 65 Wn.App. 93, 102, 827 P.2d 1070 (1992) (other citations omitted); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

The court finds that the Plaintiff has submitted sufficient evidence to submit to a jury the question of whether Plaintiff was constructively discharged and if so, was such termination of Jennings motivated, exclusively or partially, or not at all, by disability.

### 3. Wrongful Discharge In Violation of Public Policy

The Washington Supreme Court has recognized that a claim for wrongful discharge in violation of public policy may arise when an employer discharges an employee for reasons that contravene a clear mandate of public policy. *Korslund v. DynCorp Tri-Cities, Servs., Inc.*, 156 Wn.2d 168, 178, 125 P.3d 119 (2005). This cause of action was initially recognized as an exception to the terminable-at-will doctrine and has since been extended to employees who are dischargeable only for cause, including those who may be covered by a collective bargaining agreement. *Id*. The discharge may be either express or constructive. *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 238, 35 P.3d 1158 (2001). Plaintiff must prove: (1) the existence of a clear public policy; (2) that discouraging the conduct in which the employee engaged would jeopardize the public policy; and (3) that

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -10**

the public policy linked conduct caused the dismissal. *Korslund*, 156 Wn.2d at 178. The employer can defeat the cause of action by offering an overriding justification for the employee's dismissal. *Id*.

    The FMLA prohibits adverse employment actions against an employee for taking leave under this Act. 29 U.S.C. Section 2615. Pursuant to RCW 51.48.025 an employer is prohibited from discharging or in any manner discriminating against an employee because the employee has filed or communicated to the employer an intent to file a claim with State Labor and Industries (L&I).

    Plaintiff first suggests that she was terminated for filing an L&I claim. Defendant argues that there is no evidence that Plaintiff was terminated for filing L&I claims. Moreover, Defendant argues, Plaintiff was never terminated but rather put on leave based on her doctor's recommendations and her union representative's wishes. Further, Defendant argues, that it is unclear if and when the Plaintiff's district court supervisors knew about the L&I claims as they didn't directly handle such claims. Finally, Defendant argues that there is clear evidence that Plaintiff was originally put on administrative leave based on her performance.

    Plaintiff secondly suggests that she suffered retaliation in the form of discharge due to taking leave for a serious health condition. Defendant argues that the list of performance issues and the corrective action notice were drafted and delivered prior to any mention of a serious health condition and possible leave. Defendant argues that it is undisputed that Plaintiff took a brief FMLA leave a week or so prior to the notice of administrative leave, however, such leave request form didn't suggest a serious medical condition. Plaintiff's supervisor Betty Durbin testified that she never questioned the doctor regarding Plaintiff's medical issues at that point nor did she know she could do so. Defendant states that after investigating the matter, the County followed Plaintiff's doctors' recommendation to place her on leave with a right to return. Defendant concludes that there is no evidence Plaintiff sought reinstatement or has been deprived of anything.

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -11**

Defendant argues that conclusory or subjective opinions of the County's reasons for placing Plaintiff on administrative leave are insufficient to create a material issue of fact.

Plaintiff contends that she has provided the Court with evidence that she was "subjected to unwarranted discipline causing her constructive discharge on heels of the filing of those [L&I] claims." Plaintiff contends there is a genuine issue of material fact whether Judge Payne's disciplinary actions were connected to the filing of the L&I claims. Plaintiff asserts that although Defendant states it is not clear when it was known to the County that Plaintiff filed her L&I claims, she has produced evidence that defendant County and Judge Payne were aware of those claims. There is also evidence that Judge Payne disputed the factual basis for the claims. Also, there is testimony that it was generally known in the district court in June 2007 that Plaintiff had filed an L&I claim over her encounter with Judge Payne. Plaintiff's supervisor testified that she learned from the county commissioners that Plaintiff was threatening to file an L&I claim before she actually had done so.

The Washington Court of Appeals held that the tort of wrongful discharge in violation of public policy is available to a worker if the employer makes working conditions so intolerable that the employee is forced to leave the workplace for medical reasons rather than quit or resign. The court relied on the analysis in *White v. Honeywell, Inc.*, 141 F.3d 1270 (8th Cir.1998), where an employee brought a claim of constructive discharge in violation of the Civil Rights Act, 42 U.S.C. § 2000e. She had not formally quit but instead had taken an unpaid medical leave. The Court finds, as above, there is a question of fact as to whether Plaintiff was constructively terminated. If Plaintiff was constructively terminated, with regard to the instant claim, there is a question of fact as to whether the public policy linked conduct, i.e., filing L&I claims and utilizing FMLA leave for a serious medical condition, caused such termination.

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -12**

**4. FMLA Causes of Action**

As discussed *supra*, Plaintiff took medical leave from May 22, 2007 through June 5, 2007and then requested FMLA leave on July 17, 2007.  On June 13, 2007, Plaintiff was placed on  administrative leave pending a pre-termination hearing for alleged deficient performance issues.   Plaintiff alleges that the County "interfered with, restrained or denied" her exercise of FMLA rights.   Plaintiff suggests that the County interfered with her FMLA rights by requiring a corrective action plan.

Defendant argues that the County had already determined that termination was an option for Plaintiff prior to their receipt of information regarding Plaintiff's serious medical problem.  Defendant asserts that the FMLA does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had such employee not been on FMLA leave. Defendant argues it was within its rights to require a corrective action plan. Further, Defendant asserts, there was no violation of the FMLA when Plaintiff was placed on administrative leave with the right to return, instead of FMLA, after the interactive meeting on October 22, 2007.

Because there is a genuine issue of material fact whether Defendant, in violation of public policy, retaliated against Plaintiff for taking leave under the FMLA and filing L&I claims, it follows that there is a genuine issue of material fact whether Defendant "interfered" with Plaintiff's rights under those Acts.  It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.  29 U.S.C. Section 2615(a)(1). Employers cannot use the taking of FMLA leave as a negative factor in employment actions.  *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112,

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -13**

1124 (9th Cir. 2001), citing 29 C.F.R. Section 825.220(c).[6]  In order to prevail on an "interference" claim, a plaintiff must prove by a preponderance of the evidence that her taking of FMLA protected leave constituted a negative factor in the adverse employment action taken against her. *Id*. at 1125.  While it is true, as Defendant points out, that the mere fact Plaintiff was on leave did not preclude the County from exercising its right to discharge Plaintiff for work performance problems, the Plaintiff has raised questions of fact regarding whether her performance was actually deficient and whether she was terminated, constructively terminated or not terminated at all.  Defendant still could not discharge Plaintiff based on an impermissible, illegal reason, such as because the Plaintiff exercised her statutory rights to take leave or file an L&I claim.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, **Ct. Rec. 25**, is **DENIED**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this 3rd day of September, 2010.

*s/Lonny R. Suko*
--------------------------------
LONNY R. SUKO
Chief United States District Judge

---

[6] The anti-retaliation and anti-discrimination provisions of 29 U.S.C. Section 2615(a)(2) and (b),"[b]y their plain meaning . . . do not cover visiting negative consequences on an employee simply because [s]he has used . . . leave." *Bachelder*, 259 F.3d at 1124.

**ORDER DENYING MOTION FOR**
**SUMMARY JUDGMENT -14**